# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GENERAL CABLE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:24-CV-00797-TMH |
| | ) | |
| SCOTTSDALE INDEMNITY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

**HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

Pending before the court is Defendant Scottsdale Indemnity Company's motion to dismiss Plaintiff General Cable Corporation's declaratory judgment claim and anticipatory repudiation or breach of contract claim. Because the anticipatory repudiation or breach of claim is not ripe, the court grants Scottsdale's motion to dismiss General Cable's anticipatory repudiation or breach of contract claim without prejudice. And because the statute of limitations precludes the declaratory judgment claim, the court grants Scottsdale's motion to dismiss General Cable's declaratory judgment claim with prejudice.

## I.    <u>BACKGROUND</u>

General Cable purchased three layers of Directors' and Officers' (D&Os) liability insurance from Travelers Casualty and Surety Company of America, Old Republic Insurance Company, and Scottsdale for successive policy periods running from 2011–2012 (the "2011 Policies") and 2012–2016 (the "2012 Policies"). ECF No. 1 at 12, 16, Ex. A (Complaint), ¶¶ 7–9, 19–20. The insurers and structure of coverage for the 2011 Policies and 2012 Policies are identical: (1) Travelers issued the primary policies, which provided the first $15 million in coverage (subject to a $750,000 self-insured retention); (2) Old Republic issued the first excess policies, which provided up to $10 million in coverage for liability in excess of Travelers' covered $15 million; and (3) Scottsdale issued the second excess policies, which provided up to an additional $10 million in coverage for liability in excess of the $25 million in underlying coverage from Travelers and Old Republic. *Id*. at 12, ¶¶ 7–9. Scottsdale's

policies specifically state: "It is expressly agreed that liability shall attach to the Company only after the full amount of the Underlying Limits is paid in accordance with the terms of the Underlying Policies by any or all of the following. . . ." *Id*. at 145, Ex. C., § IV.A (as amended on November 1, 2011); *id*. at 240, Ex. F., § IV.A (as amended on November 30, 2012).

Beginning in 2012, General Cable incurred covered losses in connection with certain government investigations and civil lawsuits (the "Accounting Matters" and the "FCPA Matters"), the last of which concluded on April 30, 2019. *Id*. at 7–30, ¶¶ 22–71. General Cable incurred tens of millions of dollars in expenses defending the Accounting Matters and the FCPA Matters. *Id*. at 10–11, 18–19, ¶¶ 30–33, 62. Travelers took the position that the Accounting Matters and FCPA Matters are a single Claim covered under the 2011 Policies, while Old Republic took the position that the Accounting Matters are one Claim covered under the 2011 Policies and the FCPA Matters are a separate Claim covered under the 2012 Policies. *Id*. at 31, ¶ 74, 339–43, Ex. R and 349–51, Ex. S at 4–6.

Travelers has purportedly paid General Cable approximately $13 million for loss incurred in the Accounting Matters and $2 million for loss incurred in the FCPA Matters under its 2011 Policy. *Id*. at 29, ¶¶ 67–68. Old Republic has paid "more than $8.4 million" for losses incurred in the Accounting Matters under its 2011 Policy. *Id*. at 30, ¶ 69. Because Travelers and Old Republic agree that the Accounting Matters fall under their respective 2011 Policies, their 2011 Policies have been eroded by at least $21 million in losses paid for the Accounting Matters. *Id*. General Cable also

incurred at least $31.8 million in its defense of the FCPA Matters that remains outstanding because Travelers and Old Republic dispute whether the FCPA Matters are covered under the 2011 or 2012 Policies. *Id.* at 30–31, ¶¶ 70–71, 74.

General Cable notified Scottsdale of the claims, and Scottsdale acknowledged General Cable's notice but did not deny coverage. *Id.* at 20, 30–31, ¶¶ 32, 72–73. Beginning in 2019, General Cable began discussions with Travelers and Old Republic regarding certain coverage disputes for the FCPA Matters. *Id.* at 31, ¶ 76. Those discussions resulted in the scheduling of a mediation in March 2020, which was ultimately cancelled due to COVID-19 restrictions. *Id.* at 31–32, ¶¶ 76–77. General Cable made efforts to reschedule and communicated with Scottsdale in late 2021 and again in January 2022, requesting that Scottsdale acknowledge its coverage obligations and agree to participate in the rescheduled mediation. Scottsdale never responded. *Id.* at 32, ¶¶ 77–79.

On May 10, 2024, General Cable filed suit against only Scottsdale in Delaware Superior Court. *Id.* at 10. Scottsdale timely removed this case to federal court based on diversity of citizenship, *id.* at 1–6, and filed its motion to dismiss on statute of limitations grounds, ECF No. 4.

## II.    LEGAL STANDARD

A defendant may move to dismiss the claims against it for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere labels, conclusions, or a formulaic recitation of the elements of a cause of action will not suffice to make a claim plausible. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## III.  <u>DISCUSSION</u>

Scottsdale argues that General Cable's declaratory judgment claim and anticipatory repudiation or breach of contract claim are barred by Delaware's three-year statute of limitations. ECF No. 24 (Motion to Dismiss), at 7, 12. "A federal court, sitting in diversity, follows the forum's choice of law rules to determine the applicable statute of limitations." *David B. Lilly Co. v. Fisher*, 18 F.3d 1112, 1117 (3d Cir. 1994) (quoting *Ross v. Johns–Manville Corp.,* 766 F.2d 823, 826 (3d Cir.1985)). The parties agree that the applicable statute of limitations pertaining to the allegations in this case, the enforcement of an insurance contract, is governed by 10 Del. C. § 8106, which sets a three-year limitations period. ECF No. 24, at 7.

### A.    <u>Anticipatory Repudiation or Breach of Contract</u>

"Delaware courts decline to exercise jurisdiction over a case unless the underlying controversy is ripe, *i.e.,* has matured to a point where judicial action is appropriate." *XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (internal citations omitted). And "[i]t is well settled law that a contract is not breached until the time set for performance has expired." *TIAA-CREF Individual*

& *Inst. Servs., LLC v. Ill. Nat'l Ins. Co.*, No. N14C-05-178-JRJ, 2017 WL 5197860, at \*7 (Del. Super. Ct. Oct. 23, 2017), *aff'd sub nom. In re TIAA-CREF Ins. Appeals*, 192 A.3d 554 (Del. 2018) (internal citation and quotation marks omitted). *TIAA-CREF* is instructive to the issue of ripeness of the anticipatory repudiation or breach of contract claim before the court.

Similar to the current dispute, *TIAA-CREF* involved an insured party's lawsuit seeking recovery for losses from a multi-layer structure of D&Os policies. *Id.* at \*2–3. A jury rendered a verdict against the primary first-layer excess insurer, second-layer excess insurer, and third-layer excess insurer. *Id.* at \*4. The primary insurer, Illinois National, did not oppose the insured's entitlement to an entry of judgment on the insured's breach of contract claims, the insured's entitlement to recover the $15 million limit of liability of the Illinois National policy, nor the prejudgment interest prescribed by applicable New York law. *Id.* at \*5. While not disputing that their policies provided coverage for the underlying losses, both ACE and Arch, which were excess insurers, disputed that they owed any damages for breach of contract, including prejudgment interest. *Id.* at \*6. ACE and Arch argued that under the relevant terms of their policies, including the so-called "attachment provisions," they could not yet be deemed to have breached their insurance contracts because the time for their performance had not yet come due, such that prejudgment interest resulting from any such breach did not yet begin to accrue. *Id.* at \*5.

The court determined that "[u]nder the plain language of the attachment provisions of the ACE and Arch Excess Policies, only upon actual payment by Illinois

National will ACE's performance obligations become due, whereupon ACE's actual payment will trigger Arch's performance obligations." *Id*. at *8. The court explained that the policies' attachment provisions insulated the excess insurers from liability for breach of contract for claims asserted before their respective attachment. "[It] is a benefit conferred . . . by the terms of the attachment provision[]" as it allows an excess insurer "to wait out good faith coverage disputes between the insured and underlying insurer(s) without risk of breaching the excess insurer's performance obligations." *Id*. at *7–8. Thus, the court held that it "does not currently have a basis to enter a damages judgment against ACE and Arch for breach of contract." *Id*. at *8.

Similarly, the plain language of both Scottsdale's 2011 Policy and 2012 Policy states that "[i]t is expressly agreed *that liability shall attach to the Company only after the full amount of the Underlying Limits is pai*d in accordance with the terms of the Underlying Policies by any or all of the following[.]" Complaint at 145, Ex. C., § IV.A (as amended on November 1, 2011); *id*. at 240, Ex. F., § IV.A (as amended on November 30, 2012). Per the terms of the attachment provision, Scottsdale is entitled to wait out good-faith coverage disputes among General Cable, Travelers, and Old Republic without the risk of breaching its performance obligations. Thus, not only has the statute of limitations not begun to run for General Cable's anticipatory repudiation or breach of contract claim, that claim is not ripe for adjudication until the underlying policies are paid. Therefore, the court dismisses General Cable's anticipatory repudiation or breach of contract claim without prejudice because those claims are not ripe for adjudication.

B.   Declaration Judgment

"[I]n insurance coverage cases present obligation is not necessary for a declaratory judgment action." *Monsanto Co. v. Aetna Cas. & Sur. Co.*, 565 A.2d 268, 275 (Del. Super. Ct. 1989). Thus, a declaratory judgment claim may become ripe before the underlying claim.

"Delaware courts are statutorily authorized to entertain an action for a declaratory judgment, provided that an 'actual controversy' exists between the parties." *XL*, 93 A.3d at 1216–17 (citation omitted). Four prerequisites must be satisfied for an "actual controversy" to exist:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.

*Id.* at 1217 (citation omitted). Relevant here is whether the issue involved in the controversy is ripe for judicial determination.

Generally, a dispute will be deemed ripe if "litigation sooner or later appears to be unavoidable and where the material facts are static." *Julian v. Julian*, 2009 WL 2937121, at *3 (Del. Ch. Sept. 9, 2009) (internal citation and quotation marks omitted). In contrast, "a dispute will be deemed not ripe where the claim is based on uncertain and contingent events that may not occur, or where future events may obviate the need for judicial intervention." *XL,* 93 A.3d at 1217–18 (internal citation

8

and quotation marks omitted). In the insurance coverage context, the plaintiff must establish a "reasonable likelihood" that coverage under the disputed policies will be triggered. *See Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 623 A.2d 1133, 1137 (Del. Super. 1992). "Relatedly, our courts will decline to enter a declaratory judgment with respect to indemnity until there is a judgment against the party seeking it." *XL,* 93 A.3d at 1218 (internal citation and quotation marks omitted).

*XL Specialty Ins. Co. v. WMI Liquidating Tr.,* 93 A.3d 1208 (Del. 2014); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 623 A.2d 1133 (Del. Super. Ct. 1992); and *N. Am. Philips Corp. v. Aetna Cas. & Sur. Co.*, 565 A.2d 956 (Del. Super. Ct. 1989) are all instructive as to whether the current declaratory judgment claim is ripe.

In *XL*, a Trust brought a declaratory judgment claim against excess D&O insurers. 93 A.3d at 1215. The court determined the declaratory judgment claim against the excess insurer was not ripe. *Id.* at 1219–20. The court reasoned that "the Trust seeks a judicial determination that, if made, would necessarily be premised on uncertain and hypothetical facts and that ultimately may never become necessary." *Id.* at 1218. The court considered hypothetical scenarios that would and would not implicate the Trust, stating "[f]irst, the Trust might decide not to initiate legal action against the D&Os with respect to the Asserted Claim. Second, if the Trust decided to bring such an action, the D&Os might ultimately prevail. Third, the D&Os might reach a settlement with the Trust. And fourth, the Trust might obtain a judgment

9

against the D&Os." *Id.* at 1219. Thus, the court held that "[w]ithout an actual settlement or judgment in place, the retention issue presents too many 'what-ifs' for any court to proceed." *Id.*

In *Hoechst*, an insured party sought coverage from multiple layers of general liability insurance policies. 623 A.2d at 1135. The excess insurers that provided coverage for liability above the first $20 million argued for dismissal because the plaintiffs allegedly failed to show that damages would implicate liability above $20 million. *Id.* at 1135–36, 1137. The court noted that the manufacturer's product-related judgment and settlement liabilities had amounted to several million dollars as of October 1989, and that liabilities had increased by 400% by November 1990, and again by 400% by March 1992. *Id.* at 1139. The court found that those amounts easily exceeded the $20 million threshold. *Id.* The court reasoned that if, as the manufacturer alleged, the manufacturer's claims were to all fall under one policy period, under at least some policies, liability above $20 million would trigger the coverage provided by the excess insurers. *Id.* at 1139–40.

*Philips* involved a dispute between North American Philips Corporation and its primary and excess liability insurers over coverage of Philips' environmental liabilities. 565 A.2d at 957. Certain excess insurers sought dismissal of the claims against them. *Id.* at 958. The court determined that because Philips had already incurred liabilities of $49 million and had projected future additional liabilities of at least $36 million, Philips had established a likelihood that at least some of the excess policies would be implicated. *Id.* at 962. The court held that the case was ripe because

10

"[i]n weighing the concerns of judicial economy and legal stability, the best interests of justice are served if plaintiff's claims surrounding its current liability and future liabilities are all resolved uniformly by this Court." *Id.* at 962.

The facts of the present dispute are more similar to *Hoechst* and *Philips* than *XL*. Specifically, Travelers takes the position that the Accounting Matters and FCPA Matters are a single claim covered under the 2011 Policies, while Old Republic takes the position that the Accounting Matters are one claim covered under the 2011 Policies and the FCPA Matters are a separate claim covered under the 2012 Policies. But regardless of whether the FCPA Matters fall under the 2011 or 2012 Policies, General Cable has incurred at least $31.8 million in its defense of the FCPA Matters, which accordingly implicate Scottsdale because it insured General Cable for losses over $25 million. Thus, the declaratory judgment action became ripe on April 30, 2019, the date the last underlying matter was fully and finally resolved.

The three-year statute of limitations in § 8106 applies to any breach of contract action that is based on a promise, including a declaratory judgment action. *Donald M. Durkin Contracting, Inc. v. City of Newark*, 2020 WL 2991778, at *8 (Del. Sup. June 4, 2020). The statute of limitations for the declaratory judgment claim began to run when that claim was ripe for adjudication on April 30, 2019, the date General Cable was confident that "any claim against [it] . . . ha[d] been resolved with certainty." *Scharf v. Edgcomb Corp.*, 864 A.2d 909, 919 (Del. 2004); *see also Homeland Ins. Co. of N.Y. v. CorVel Corp.*, 197 A.3d 1042, 1046–47 (Del. 2018) (statute of limitations began to accrue when the insured settled the underlying action for which

it sought indemnification and defense expense coverage); *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1281 (Del. 2016) (statute of limitations began to run when the underlying judgment became final). But General Cable did not bring its declaratory judgment claim until May 10, 2024, over five years after the declaratory judgment action began to accrue. Thus, General Cable's declaratory judgment claim is time barred by 10 Del. C. § 8106, which sets a three-year limitations period.

Therefore, the court dismisses General Cable's declaratory judgment claim with prejudice as time barred by the applicable statute of limitations set forth in 10 Del. C. § 8106.

## IV.    **CONCLUSION**

Because General Cable's anticipatory repudiation or breach of contract claim is not ripe for adjudication, the court dismisses that claim without prejudice. And because General Cable's declaratory judgment claim is time-barred by the applicable statute of limitations, the court dismisses that claim with prejudice.